Unsealed 6/17/11   FILED

KT 11 MAY 26 PM 4: 50

SEALED

SOUTHERN DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:

DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### January 2010 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARMEN TEPPER (1),<br>DENISE MASTRO (2),<br>TEPPER TECHNOLOGIES, INC. (3)<br><br>Defendants. | Case No. '11 CR 21 52 JLS<br><br>I N D I C T M E N T<br><br>Title 18, U.S.C., Sec. 371 - Conspiracy to Defraud the United States and to Make False Statements Under Penalty of Perjury in Documents Required by Immigration Law; Title 18, U.S.C., Sec. 1546 - Making False Statement Under Penalty of Perjury in Document Required by Immigration Law; Title 18, U.S.C., Sec. 982 - Criminal Forfeiture |

The grand jury charges:

### GENERAL ALLEGATIONS

At all times relevant to this indictment:

### The Immigration Framework

1.   Any person in the United States who was not a citizen or national of the United States was an alien.

2.   An alien legally admitted to enter and remain in the United States for a temporary duration of time was a nonimmigrant alien.

//

//

//

GVM:lml:San Diego
5/25/11

1   

3.    One avenue by which a nonimmigrant alien could legally enter the United States was by obtaining an F-1 visa.  An F-1 visa was available to an alien having a residence in a foreign country which he or she had no intention of abandoning, who was a bona fide student qualified to pursue a full course of study, and who sought to enter the United States temporarily and solely for the purpose of pursuing such a course of study at an established academic program, including a language training program, in the United States.

4.    The Department of State ("DOS") was an agency of the executive branch of the Government of the United States.  The Department of State ("DOS") issued various classes of visas necessary for an alien to lawfully enter into, and remain in the United States, including student (F-1) visas.

5.    The Department of Homeland Security ("DHS") was an agency of the executive branch of the Government of the United States.  The Department of Homeland Security ("DHS") had jurisdiction over the adjudication of applications by nonimmigrant aliens for F-1 visas in order to lawful enter into, and remain in, the United States; for maintaining accurate records of nonimmigrant aliens with F-1 visas; for monitoring that nonimmigrant aliens with F-1 visas maintained their status to legally remain in the United States; and for removing nonimmigrant aliens with F-1 visas from the United States who failed to maintain their status (were "out of status").

6.    Immigration and Customs Enforcement, a component of DHS, administered the issuance of F-1 visas through its Student and Exchange Visitor Program ("SEVP").  SEVP was designed to help DHS and DOS monitor schools that admitted aliens with certain classes of visas, including F-1 visas, and the students who obtained such visas.

7.    SEVP used the Student and Exchange Visitor Information System ("SEVIS"), an internet website system, to communicate with, track, and monitor academic institutions, including language training programs, that admitted aliens with certain classes of visas, including F-1 visas, as well as students and their dependents who obtained such visas.

8.    The process by which a nonimmigrant alien obtained an F-1 visa began by the alien applying to a United States government approved school, including one offering a language training program, in the United States.  If accepted, the school provided the alien a Form I-20, Certificate of Eligibility for Non-Immigrant (F-1) Student Status – For Academic and Language Students ("Form I-20").   A Form I-20 was required in order for the alien to obtain an F-1 visa allowing them to enter the United States.

9.    The issuance of Form I-20s, and the entrance into SEVIS of current information on foreign students who received Form I-20s, was the responsibility of a Designated School Official ("DSO").  A DSO was defined by United States regulations as a regularly employed member of the school administration whose office is located at the school and whose compensation does not come from commissions for recruitment of foreign students.  A primary DSO ("PDSO") was responsible for updating SEVIS to reflect the addition or deletion of any DSO at his or her school.

10.    The first time a DSO accesses SEVIS, he or she must agree with a compliance statement indicating that they have read and will comply with certain regulations at all times, including 8 CFR 214.2(f) and 214.3.

//

11.  In order for a school, including a language training program, to have received approval to enroll F-1 students, it must have been certified by SEVP to do so.  The certification process was initiated by a school filing a Form I-17, Petition for Approval of School for Attendance by Nonimmigrant Student ("Form I-17"), through SEVIS, and paying a fee.  Separate petitions were required for new campuses in the same school system.  The Form I-17 listed the individuals the school wanted to become DSOs.

12.  The Form I-17, Supplement A ("Form I-17A"), included the names, titles, and signatures of each DSO.  The Form I-17A, required each DSO to certify that he or she was familiar with, among other things, regulations relating to nonimmigrant students, including 8 CFR 214.1 and 8 CFR 214.2(f), and  regulations relating to school approval and withdrawal of school approval, namely 8 CFR 214.3 and 214.4, and affirming the official's intent to comply with these regulations.  An individual who became a DSO after the submission of the Form I-17 was required to make the same certification.  The president, owner, or head of the school was also required to verify the DSOs identities, and that they would be responsible for providing the resources and training necessary for the DSOs to properly implement the referenced regulations.

13.  Once a school, including a language training program, was certified by SEVP, it has the ability to issue Form I-20s directly to prospective alien students.

14.  Once the Form I-20 was issued to an alien wishing to enter and remain in the United States to attend a United States school, including a language training program, the nonimmigrant alien presented himself or herself along with the Form I-20 and supporting

4

1 financial documentation to a United States Consulate abroad and
2 applied for issuance of an F-1 student visa.

3     15. After the alien was issued an F-1 student visa at a
4 Consulate abroad, he or she then presented himself or herself at a
5 port of entry in the United States and was admitted as an F-1 student
6 for "duration of status."

7     16. "Duration of status" was defined by 8 CFR 214.2(f)(5) as the
8 time during which an F-1 student is pursuing a "full course of study"
9 at an educational institution, including a language training program,
10 approved by SEVP for attendance by alien students.

11     17. The Form I-20 required for an alien student to receive an
12 F-1 visa contained the student's biographical information, the school
13 and program he or she had been accepted to attend, the report date and
14 length of the program, and proof that the student had necessary funds
15 to live and study in the United States without working or suffering
16 from poverty.

17     18. Pursuant to 8 CFR § 214.2(f)(2), an F-1 student was required
18 to safekeep the initial I-20 and any subsequent copies which had been
19 issued to him or her.

20     19. Pursuant to 8 CFR 214.3(k), a DSO was required to sign a
21 completed I-20 issued by his or her school. The Form I-20 required
22 the DSO to certify under penalty of perjury that the information on
23 it was true. The DSO also certified under penalty of perjury that
24 "the student will be required to pursue a full course of study as
25 defined by 8 CFR 214.2(f)(6)." Also, a Form I-17 required a school
26 official to certify that, if approved, the school would keep a
27 photocopy of each F-1 student's I-20.

28 //

20.   8 CFR 214.2(f)(6)(i)(D) defined a "full course of study," for purposes to include the definition of "duration of status," and the DSO's certification under penalty of perjury on a Form I-20, with regards to a "language, liberal arts, fine arts, or other nonvocational training program" to be "certified by a designated school official to consist of at least eighteen clock hours of attendance a week if the dominant part of the course of study consists of classroom instruction."

21.   Pursuant to 8 CFR 214.2(f)(1)(iii), SEVP approved schools, including language training programs, were required to issue a new Form I-20 to any current student requiring a "reportable action," such as extensions of the time the student was authorized to stay in the United States beyond the completion date indicated on a previous I-20, reducing the required course load below a full course of study, or transferring to a new school, including a new campus within a school system.

22.   Pursuant to 8 CFR 214.2(f)(6)(iii), a student who dropped below a full course of study without the prior approval of a DSO, was "out of status."

23.   Pursuant to 8 CFR 214.2(f)(6)(iii), a DSO could only allow an F-1 student to engage in less than a full course of study, for: 1) academic difficulties; 2) medical conditions; or 3) at the end of a course of study if fewer courses were needed to complete the course of study.   In these cases, the DSO could authorize the student to engage in half the clock hours required for a full course of study. In order for a DSO to so authorize, the DSO had to update SEVIS prior to such a reduction.

//

24.   Pursuant to 8 CFR 214.3(g)(2)(iii)(A), for each term or session, and no later than thirty days after the deadline for registering for classes, schools, including language training programs, enrolling F-1 students were required to report, for each F-1 student, certain events, including whether the student dropped below a full course of study without prior authorization by a DSO.

25.   Pursuant to 8 CFR 214.3(g)(2)(ii), a school, including a language training program, that enrolled F-1 students was required to report through SEVIS within 21 days any student who had failed to maintain status or complete his or her program.

26.   Pursuant to SEVP's policy, a DSO at a school, including a language training program, that enrolled F-1 students, was required to terminate a student in SEVIS when it became known that the student had violated the terms of his or her status by dropping below a full course of study without prior authorization by a DSO.

27.   An F-1 student who was out of status, including for failure to maintain a full course of study without prior DSO approval, was removable from the United States.

## Defendants and Other Entities

28.   The San Diego International Academy of English ("SDIAE") is a school in and around San Diego, California, that teaches English as a second language ("ESL"), mainly to nonimmigrant aliens who obtain F-1 (student) visas to attend the school. The dominant part of the course of study at SDIAE consisted of classroom instruction. San Diego International Academy of English ("SDIAE") is owned by defendant TEPPER TECHNOLOGIES, INC.

//

//

7

29.   Southern States University ("SSU") is a private university in and around San Diego, California, that offers bachelorette and masters degree programs, and also has students who are enrolled in an ESL program, including nonimmigrant aliens who obtain F-1 visas to attend the school.   The dominant part of the course of study at SSU consisted of classroom instruction.   SSU is owned by defendant TEPPER TECHNOLOGIES, INC.

30.   San Diego International Academy of English ("SDIAE")  and Southern States University ("SSU") operate at the same site in two locations in and around San Diego, California, including, 6950 Friars Road, Suite 200, San Diego, California, and 3252 Holiday Court, Suite 111 and 116, La Jolla, California.   San Diego International Academy of English ("SDIAE") also operates at 1727 and 1729 5th Avenue, San Diego, California, and operated, at times, at 3445 Midway, San Diego, California.   Southern States University ("SSU") also operates at 919 Garnet Avenue, Suite 207, San Diego, California, and 340 Rancheros Drive, Suite 260, San Marcos, California.   San Diego International Academy of English ("SDIAE")  and Southern States University ("SSU") advertise that they are in partnership with each other.

31.   San Diego International Academy of English ("SDIAE")  and Southern States University ("SSU"), at all of the campuses listed in the preceding paragraph, except the La Jolla, California SSU campus, have been certified by SEVP to issue Form I-20s to nonimmigrant aliens so that those aliens may enter and remain in the United States via an F-1 visa in order to attend the schools.

//

//

8

32. Defendant CARMEN TEPPER is an owner of defendant TEPPER TECHNOLOGIES, INC., the chairman of the board of directors for defendant TEPPER TECHNOLOGIES, INC., the president of defendant TEPPER TECHNOLOGIES., INC., and an employee of SDIAE and SSU.

33. Defendant DENISE MASTRO is an employee of SDIAE and SSU.

## Count 1

### (18 U.S.C. § 371)

34. Paragraphs 1 through 33 of the General Allegations of this Indictment are realleged and incorporated by reference as though fully set forth herein.

35. Beginning at an unknown date, but no later than in or around December 2004, and continuing thereafter until May 26, 2011, within the Southern District of California, and elsewhere, defendants CARMEN TEPPER, DENISE MASTRO, and TEPPER TECHNOLOGIES, INC., did knowingly and intentionally conspire and agree with each other, and with other persons both known and unknown to the grand jury:

(A) to defraud the United States, and

(B) to commit offenses against the United States in violation of Title 18, United States Code, Section 1546(a), that is, to knowingly subscribe as true under penalty of perjury, as permitted under Section 1746 of Title 28, United States Code, a false statement with respect to a material fact in an application and other document required by the immigration laws and regulations prescribed thereunder, that is, in a Form I-20, Certificate of Eligibility for Nonimmigrant (F-1) Student Status – For Academic and Language Students.

//

//

36. It was a part of the conspiracy that defendants CARMEN TEPPER, DENISE MASTRO, and TEPPER TECHNOLOGIES, INC., would defraud the United States by interfering with and obstructing the lawful governmental functions of DHS, that is, the maintenance of accurate records of nonimmigrant aliens with F-1 visas, monitoring that nonimmigrant aliens with F-1 visas maintained their status to legally remain in the United States, and removing from the United States nonimmigrant aliens with F-1 visas who failed to maintain their status (were "out of status"), by failing to terminate in SEVIS F-1 students at SDIAE and SSU who violated the terms of their status by dropping below a full course of study without a DSO's prior approval, all by deceit, craft and trickery and by means that are dishonest.

## PURPOSE OF THE CONSPIRACY

37. The purpose of the conspiracy was for the defendants CARMEN TEPPER and DENISE MASTRO to unjustly enrich themselves by defrauding the United States by not terminating in SEVIS F-1 students at SDIAE and SSU who violated the terms of their status by dropping below a full course of study without a DSO's prior approval, and by issuing Form I-20s to nonimmigrant aliens containing false and fraudulent certifications that the aliens would be required to take a full course of study at SDIAE and SSU, despite defendants CARMEN TEPPER and DENISE MASTRO knowing that the nonimmigrant aliens would not be required to attend a full course of study as required by federal laws and regulations, in order for the aliens to obtain and maintain F-1 student visas to attend SDIAE and SSU, allowing the schools to collect tuition payments from the nonimmigrant aliens.

//

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants CARMEN TEPPER and DENISE MASTRO sought to accomplish the purpose of the conspiracy included, among other things, the following:

38.  The defendants CARMEN TEPPER and DENISE MASTRO on behalf of SDIAE and SSU, filled out Form I-17 applications with the Department of Homeland Security to have SDIAE and SSU approved to issue Form I-20s to nonimmigrant alien students.  As part of the application process, the defendants CARMEN TEPPER and DENISE MASTRO stated that they were familiar with pertinent federal regulations related to nonimmigrant students, including 8 CFR 214.2(f), and regulations related to school approval and withdrawal of school approval, including 8 CFR 214.3, and that they intended to comply with those regulations.

39.  Defendant DENISE MASTRO, and others, issued Form I-20s to nonimmigrant aliens, which the nonimmigrant aliens used to obtain F-1 student visas from the United States Department of State.

40.  On the Form I-20s, defendant DENISE MASTRO and others, would falsely and fraudulently subscribe as true under penalty of perjury that the students would be required to pursue a full course of study as defined by federal regulations.

41.  San Diego International Academy of English ("SDIAE") and Southern States University ("SSU") would receive tuition payments from nonimmigrant aliens who received F-1 visas based on Form I-20s issued by SDIAE and SSU, despite the fact that, as defendants CARMEN TEPPER and DENISE MASTRO knew at the times the I-20s were issued, the nonimmigrant aliens would not be required to pursue a full course of study.

11

42.  Despite federal regulations requiring them to report to SEVP F-1 students' violations of the requirement to pursue a full course of study, at each term or session, and no later than thirty days after the deadline for registering for classes, the defendants CARMEN TEPPER and DENISE MASTRO would fail to report to SEVP that many F-1 students at SDIAE and SSU were not pursuing a full course of study without approval to do so.

43.  Despite federal regulations requiring them to report to SEVP within 21 days any F-1 student who had failed to maintain status, the defendants CARMEN TEPPER and DENISE MASTRO would fail to report to SEVP that many F-1 students at SDIAE and SSU failed to maintain status.

44.  Despite being required to do so by SEVP regulations, defendants CARMEN TEPPER and DENISE MASTRO would not terminate F-1 students' I-20 in SEVIS who violated the terms of their status by dropping below a full course of study without a DSO's prior approval.

45.  The defendants CARMEN TEPPER and DENISE MASTRO failed to report to DHS that many nonimmigrant aliens with F-1 visas were not pursuing a full course of study at SDIAE and SSU, by failing to terminate such nonimmigrant aliens in SEVIS, so that those nonimmigrant aliens would retain their F-1 status and continue to pay tuition to SDIAE and SSU, rather than being removed from the United States by the Department of Homeland Security.

//
//
//
//
//

12

OVERT ACTS

In furtherance of the conspiracy, and to accomplish the purpose thereof, at least one of the co-conspirators committed and caused to be committed, within the Southern District of California, at least one of the following overt acts, among others:

46.   At some time between September 2005 and May 2006, defendant DENISE MASTRO told an ESL teacher at SDIAE's downtown campus to credit students for attending class for an entire week if they handed in a paper at the end of the week.

47.   On a few occasions between September 2005 and March 2009, defendant DENISE MASTRO told an employee of SDIAE and SSU that defendant CARMEN TEPPER did not want students who were paying their tuition to be terminated in SEVIS regardless of whether they were attending class or not.

48.   Between approximately 2006 and August 2008, defendant CARMEN TEPPER regularly told an SDIAE DSO that the school's attendance policies were just so the school could have them on paper to send to accreditation bureaus.

49.   Between approximately 2006 and August 2008, defendant CARMEN TEPPER repeatedly told an SDIAE DSO to keep students active in SEVIS even though the students were not attending classes enough to maintain a full course of study.

50.   On or about June 30, 2006, defendant DENISE MASTRO, did falsely subscribe as true under penalty of perjury, in a Form I-20, that Y.Y. would be required to pursue a full course of study as defined by 8 CFR 214.2(f)(6) at SDIAE.

//

//

51. On or about September 5, 2006, defendant DENISE MASTRO, did falsely subscribe as true under penalty of perjury, in a Form I-20, that M.S. would be required to pursue a full course of study as defined by 8 CFR 214.2(f)(6) at SDIAE.

52. On or about December 4, 2006, defendant CARMEN TEPPER signed a Form I-17A indicating that she read, and intended to comply with, federal regulations related to her duty to report to SEVP when students at SDIAE's Fashion Valley campus failed to maintain status, and when students dropped below a full course of study.

53. On or about December 4, 2006, defendant DENISE MASTRO signed a Form I-17A indicating that she read, and intended to comply with, federal regulations related to her duty to report to SEVP when students at SDIAE's Fashion Valley campus failed to maintain status, and when students dropped below a full course of study.

54. On or about December 4, 2006, defendant CARMEN TEPPER falsely stated to a DHS contract investigator that students at SDIAE's Fashion Valley and La Jolla campuses would be required to maintain 18 weekly instructional hours and those students would not be allowed to drop below a full course of study.

55. On or about January 22, 2007, defendant CARMEN TEPPER signed a Form I-17A indicating that she read, and intended to comply with, federal regulations related to her duty to report to SEVP when students at SDIAE's La Jolla campus failed to maintain status, and when students dropped below a full course of study.

//
//
//
//

56.  On or about January 22, 2007, defendant DENISE MASTRO signed a Form I-17A indicating that she read, and intended to comply with, federal regulations related to her duty to report to SEVP when students at SDIAE's La Jolla campus failed to maintain status, and when students dropped below a full course of study.

57.  On or about September 17, 2007, defendant CARMEN TEPPER signed a Form I-17A indicating that she read, and intended to comply with, federal regulations related to her duty to report to SEVP when students at SSU's Fashion Valley campus failed to maintain status, and when students dropped below a full course of study.

58.  On or about September 17, 2007, defendant DENISE MASTRO signed a Form I-17A indicating that she read, and intended to comply with, federal regulations related to her duty to report to SEVP when students at SSU's Fashion Valley campus failed to maintain status, and when students dropped below a full course of study.

59.  Between approximately August 2008 and March 2009, defendant DENISE MASTRO transferred 1-2 students per month from SDIAE's downtown campus to SDIAE's Pacific Beach campus, knowing their attendance was poor and therefore they were failing to pursue a full course of study.

60.  On or about October 8, 2008, defendants CARMEN TEPPER and DENISE MASTRO were present when one of them, or an employee of SSU, falsely stated to a DHS contract investigator that at SSU's San Marcos campus, F-1 students attendance were monitored to assure they are maintaining a full course of study.

//

//

//

//

61.   On or about October 14, 2008, defendant CARMEN TEPPER signed a Form I-17A indicating that she read, and intended to comply with, federal regulations related to her duty to report to SEVP when students at SSU's San Marcos campus failed to maintain status, and when students dropped below a full course of study.

62.   On or about October 14, 2008, defendant DENISE MASTRO signed a Form I-17A indicating that she read, and intended to comply with, federal regulations related to her duty to report to SEVP when students at SSU's San Marcos campus failed to maintain status, and when students dropped below a full course of study.

63.   In or about November 2008, defendant DENISE MASTRO transferred T.D. from SDIAE's downtown campus to SDIAE's Pacific Beach campus despite T.D.'s failure to pursue a full course of study at the downtown campus between April 2008 and October 2008.

64.   Sometime between approximately November 2008 and December 8, 2008, defendant CARMEN TEPPER told SDIAE's Pacific Beach site director not to terminate T.D.'s Form I-20, despite his failure to maintain a full course of study.

65.   On or about December 8, 2008, defendant DENISE MASTRO transferred T.D. from SDIAE's Pacific Beach campus to SSU's Fashion Valley campus, despite T.D.'s failure to pursue a full course of study prior to the transfer.

66.   Between November 2008 and May 2009, defendants CARMEN TEPPER and DENISE MASTRO told SDIAE's and SSU's accountant that they did not want to terminate all at once in SEVIS a large number of students identified as neither attending class nor paying tuition, because they did not wish to bring attention to themselves from federal immigration officials.

16

231c9c1c1b8c4075

67.   On or about February 9, 2009, defendant DENISE MASTRO, did falsely subscribe as true under penalty of perjury, in a Form I-20, that S.P. would be required to pursue a full course of study as defined by 8 CFR 214.2(f)(6) at SDIAE.

68.   On or about February 10, 2009, defendant DENISE MASTRO, did falsely subscribe as true under penalty of perjury, in a Form I-20, that D.H. would be required to pursue a full course of study as defined by 8 CFR 214.2(f)(6) at SDIAE.

69.   On or about February 11, 2009, defendant DENISE MASTRO, did falsely subscribe as true under penalty of perjury, in a Form I-20, that N.K. would be required to pursue a full course of study as defined by 8 CFR 214.2(f)(6) at SDIAE.

70.   In or about May 2009, defendant DENISE MASTRO told SDIAE's and SSU's accountant that she was fired because defendant CARMEN MASTRO was afraid she would report to law enforcement officials problems with the way the schools were handling information in SEVIS.

71.   On or about July 27, 2009, defendant DENISE MASTRO, did falsely subscribe as true under penalty of perjury, in a Form I-20, that A.B. would be required to pursue a full course of study as defined by 8 CFR 214.2(f)(6) at SDIAE.

72.   On or about September 18, 2009, defendant DENISE MASTRO, did falsely subscribe as true under penalty of perjury, in a Form I-20, that V.N. would be required to pursue a full course of study as defined by 8 CFR 214.2(f)(6) at SDIAE.

//

//

//

//

79. On or about April 23, 2010, defendant DENISE MASTRO, did falsely subscribe as true under penalty of perjury, in a Form I-20, that C.L. would be required to pursue a full course of study as defined by 8 CFR 214.2(f)(6) at SDIAE.

## Counts 2-11

### (18 U.S.C. § 1546(a))

80. On or about the dates listed below, in the Southern District of California, defendants DENISE MASTRO and CARMEN TEPPER did knowingly subscribe as true under penalty of perjury, as permitted under Section 1746 of Title 28, United States Code, a false statement with respect to a material fact, that is, that the students listed below would be required to pursue a full course of study as defined by 8 CFR 214.2(f)(6) at SDIAE, which statement defendants DENISE MASTRO and CARMEN TEPPER then and there knew was false, in that those students would not be required to pursue a full course of study as defined by 8 CFR 214.2(f)(6) at SDIAE, in an application and document required by the immigration laws and regulations prescribed thereunder, that is, in a Form I-20, Certificate of Eligibility for Nonimmigrant (F-1) Student Status - For Academic and Language Students, in violation of Title 18, United States Code, Section 1546(a), and *Pinkerton v. United States*, 328 U.S. 640 (1946).

//
//
//
//
//
//
//

73. On or about December 21, 2009, defendant CARMEN TEPPER was present when she, or an employee of SDIAE, falsely stated to a DHS contract investigator that at SDIAE's Point Loma campus, before a student would be allowed to drop below a full course of study, a PDSO would update SEVIS indicating that the student had been allowed to do so.

74. On or about January 4, 2010, defendant CARMEN TEPPER signed a Form I-17A indicating that she read, and intended to comply with, federal regulations related to her duty to report to SEVP when students at SDIAE's Point Loma campus failed to maintain status, and when students dropped below a full course of study.

75. On or about January 4, 2010, defendant DENISE MASTRO signed a Form I-17A indicating that she read, and intended to comply with, federal regulations related to her duty to report to SEVP when students at SDIAE's Fashion Valley campus failed to maintain status, and when students dropped below a full course of study.

76. On or about January 24, 2010, defendant DENISE MASTRO, did falsely subscribe as true under penalty of perjury, in a Form I-20, that N.P. would be required to pursue a full course of study as defined by 8 CFR 214.2(f)(6) at SDIAE.

77. On or about February 4, 2010, defendant DENISE MASTRO, did falsely subscribe as true under penalty of perjury, in a Form I-20, that D.S. would be required to pursue a full course of study as defined by 8 CFR 214.2(f)(6) at SDIAE.

78. On or about March 2, 2010, defendant DENISE MASTRO told Y.Y., an intern at SDIAE's downtown campus, to falsely tell immigration officers she was attending classes at SDIAE.

//

| COUNT | DATE | STUDENT |
|---|---|---|
| 2 | June 30, 2006 | Y.Y. |
| 3 | September 5, 2006 | M.S. |
| 4 | February 9, 2009 | S.P. |
| 5 | February 10, 2009 | D.H. |
| 6 | February 11, 2009 | N.K. |
| 7 | July 27, 2009 | A.B. |
| 8 | September 18, 2009 | V.N. |
| 9 | January 24, 2010 | N.P. |
| 10 | February 4, 2010 | D.S. |
| 11 | April 23, 2010 | C.L. |

## CRIMINAL FORFEITURE ALLEGATIONS

### (18 U.S.C. § 982)

81.   The allegations contained in Counts 1 through 11 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures to the United States pursuant to Title 18, United States Code, Section 982(a)(6).

82.   Upon conviction of the offenses in violation of Title 18, United States Code, Sections 371 and 1546 set forth in Counts 1 through 11 of this Indictment, the defendants CARMEN TEPPER and TEPPER TECHNOLOGIES, INC., shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(6):

//
//
//
//
//
//

20

     (A) any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offenses; and

     (B) any property, real or personal --

       (i) that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offenses; or

       (ii) that was used to facilitate, or was intended to be used to facilitate, the commission of the offenses.

    The property to be forfeited includes, but is not limited to: the sum of $3,031,855.00 in United States currency, and all proceeds traceable thereto, in that such sum of property in the aggregate constitutes proceeds obtained directly or indirectly from the commission of the criminal offenses set forth in Counts 1 through 11. Each of the defendants is jointly and severally liable for the full amount of the forfeitures.

    83. If any of the property described above, as a result of any act or omission of the defendants:

     a.    cannot be located upon the exercise of due diligence;

     b.    has been transferred or sold to, or deposited with, a third party;

     c.    has been placed beyond the jurisdiction of the court;

     d.    has been substantially diminished in value; or

     e.    has been commingled with other property which cannot be divided without difficulty;

//

//

//

//

21

1  the United States of America shall be entitled to forfeiture of
2  substitute property pursuant to Title 21, United States Code,
3  Section 853(p), as incorporated by Title 18, United States Code,
4  Section 982(b)(1) and Title 28, United States Code, Section 2461(c).
5  All pursuant to 18 U.S.C. § 982(a)(6) and 28 U.S.C. § 2461(c).
6      DATED:  May 26, 2011.

7
8                                      A TRUE BILL:
9                                      _____
                                       Foreperson
10 LAURA E. DUFFY
   United States Attorney
11
12 By: _____
       GEORGE V. MANAHAN
13     Assistant U.S. Attorney
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28